1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    BRAYAN MEZA,                          No.  2:18-CV-3206-JAM-DMC-P

12              Plaintiff,

13         v.                               FINDINGS AND RECOMMENDATIONS

14    A. CHAUDHRY, et al.,

15              Defendants.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court is Defendants' motion for judgment on the

19    pleadings. See ECF No. 89.

20

21                              **I.  BACKGROUND**

22         A.    **Plaintiff's Allegations**

23              This action proceeds on Plaintiff's Second Amended Complaint. ECF No. 58.

24    Plaintiff is a prisoner in custody of the California Department of Corrections and Rehabilitation

25    ("CDCR").  Id. at 1.  All the alleged violations occurred at the California Health Care Facility

26    ("CHCF").  Id. Defendant Chaudhry was a librarian at CHCF.  Id. at 2.  Defendant Harrison was

27    a librarian at CHCF.  Id. Defendant Banks was a lieutenant at CHCF.  Id.  Defendant Martel was

28    a warden at CHCF.  Id.

                                        1

1    Before February 6, 2017, CHCF had housing facilities where Sensitive Needs

2    Yard ("SNY") and General Population ("GP") inmates were housed in different buildings, had

3    separate programming, and were able to use the library at separate times.  See id. at 10.  However,

4    on February 6, 2017, CDCR enforced state-wide transition protocols, where all CDCR medical

5    facilities were converted into non-designated programming facilities.  Id.  Inmates were informed

6    that the new policy was voluntary, and that inmates who chose not to participate had the option to

7    transfer to a different institution.  Id.  Plaintiff was a GP inmate and elected not to participate in

8    the new programming at CHCF.  Id.  As such, Plaintiff was placed in housing unit C2B pending

9    transfer to another institution.  Id.

10    On September 22, 2017, Plaintiff received a letter from the California Supreme

11    Court regarding his ongoing habeas corpus petition.  See id.  The letter stated that Plaintiff had

12    twenty days to reply to the Office of the Attorney General's ("OAG") informal response to the

13    court.  See id.  In response, on October 3, 2017, Plaintiff submitted a CDCR Form 22 to a

14    librarian, and Plaintiff told the librarian of his urgent need to access legal materials in anticipation

15    of his upcoming deadline.  See id. at 10-11.  Plaintiff informed the librarian that the Law Library

16    Electronic Delivery Service ("LLEDS") in C2B did not have the proper legal materials and the

17    LLEDS needed to be updated.  See id.

18    On October 9, 2017, Plaintiff completed a Priority Library User ("PLU") request

19    form, which was granted on October 17, 2017.  See id. at 10.  Thereafter, a response was issued to

20    the October 3, 2017, Form 22 indicating that Plaintiff was granted PLU status until October 29,

21    2017.  See id. at 11.  On October 22, 2017, Plaintiff filed a CDCR 602 appeal stating that he

22    lacked physical access to the law library.  Id. at 11.  The record indicates that Plaintiff was able to

23    use the LLEDS (mobile computers) and could request legal materials through paging.[1]  Id. at 11,

24    37-38. On March 8, 2018, Plaintiff's 602 Appeal was denied at the third level.  See id. at 11.

25    _____

26    [1]    Plaintiff was not allowed physical access to the library because he did not
participate in the non-designated Programming Facility. However, Plaintiff was designated as a
Priority Legal User, and had access to the law library via "paging." When unable to physically

27    access the law library, an inmate may request access to legal material through delivery of those
materials to the inmate by library staff. This process is known as law library paging. See ECF No.

28    58 at 37-38.

1    Plaintiff alleges that Librarian Defendant A. Chaudhry and Defendant Harrison

2  discriminated against Plaintiff by barring him access to the law library.  Plaintiff asserts that he

3  was barred access to the law library because he elected to remain a non-programming, "GP

4  inmate."  See id. at 2-4.  Furthermore, Plaintiff asserts that Defendant Warden Martel and

5  Defendant Lieutenant Banks also discriminated against Plaintiff because he elected not to

6  participate as a "programming inmate."  Plaintiff contends that his habeas petition was inadequate

7  because he did not have proper access to legal materials.  See id. at 12.  Because Plaintiff was

8  unable to gain physical access to the law library, he claims he could not set forth a sufficient legal

9  defense with respect to his habeas petition that were available to other inmates.  See id. at 4.

10  Plaintiff asserts he suffered from psychological and emotion distress as a result of Defendants'

11  actions.  See id. at 3-4, 12.

12    **B.    Procedural History**

13    Defendants Chaudry and Martel were properly served service of process. ECF No.

14  25; ECF No. 27.  On May 29, 2019, California Health Care Facility was terminated as a

15  Defendant.  ECF No. 54.  On June 10, 2019, Plaintiff filed a motion to amend his amended

16  complaint.  ECF No. 55.  Subsequently, Plaintiff filed his second amended complaint adding

17  Defendants Harrison and Banks to his complaint.  ECF No. 58.  On August 14, 2019, Plaintiff's

18  motion to amend the amended complaint was granted.  ECF No. 62.  Service of the second

19  amended complaint was found appropriate for Harrison and Banks and Defendants Chaudhry and

20  Martel were ordered to file a response to Plaintiff's second amended complaint.  Id.  On

21  September 13, 2019, Defendants A. Chaudhry and Michael Martel filed their answer.  ECF No.

22  66.  On January 8, 2020, Defendant Banks waived service of summons.  ECF No. 74.  On

23  February 11, 2020, Defendant Banks filed his answer.  ECF No. 77.  However, the record

24  indicates that Defendant Harrison has not been served, and Defendants' Motion for Judgment on

25  the Pleadings indicates that Harrison has not requested representation from the Office of the

26  Attorney General.  See ECF No. 89-1 at 8.

27  / / /

28  / / /

1

## II.  STANDARD FOR JUDGMENT ON THE PLEADINGS

2          "After the pleadings are closed—but early enough not to delay trial—a party may

3   move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is

4   properly granted when, accepting all factual allegations in the complaint as true, there is no issue

5   of material fact in dispute, and the moving party is entitled to judgment as a matter of

6   law."  Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal

7   quotation marks omitted).  Like a motion to dismiss under Rule 12(b)(6), a motion under Rule

8   12(c) challenges the legal sufficiency of the claims asserted in the complaint.  See id.  Indeed,

9   a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the

10  "same standard."  Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir.

11  1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the

12  timing of filing");  see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054

13  n.4 (9th Cir. 2011).

14          Judgment on the pleadings should thus be entered when a complaint does not plead

15  "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly,

16  550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

17  content that allows the court to draw the reasonable inference that the defendant is liable for the

18  misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is

19  not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

20  has acted unlawfully."  Id. (internal quotation marks omitted).   For purposes of ruling on a Rule

21  12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the

22  pleadings in the light most favorable to the nonmoving party."   Manzarek v. St. Paul Fire &

23  Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

### III.  DISCUSSION

2              Defendants argue that Plaintiff fails to state any claims upon which relief can be

3   granted because Plaintiff failed to state cognizable claims under the First, Sixth, and Fourteenth

4   Amendments.  See ECF No. 89-1 at 8.  Defendants also argue that they are entitled to qualified

5   immunity as to all of Plaintiff's claims.  For the reasons set forth below, the Court agrees.

6        **A.       Fourteenth Amendment Claim – Equal Protection**

7              Equal protection claims arise when a charge is made that similarly situated

8   individuals are treated differently without a rational relationship to a legitimate state purpose.

9   See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  Prisoners are protected from

10  invidious discrimination based on race.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

11  Racial segregation is unconstitutional within prisons save for the necessities of prison security

12  and discipline.  See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam).  Prisoners are also

13  protected from intentional discrimination on the basis of their religion.  See Freeman v. Arpaio,

14  125 F.3d 732, 737 (9th Cir. 1997).  Equal protection claims are not necessarily limited to racial

15  and religious discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir.

16  2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the

17  disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal.

18  2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals

19  where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069

20  (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

21             In order to state a § 1983 claim based on a violation of the Equal Protection Clause

22  of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional

23  discrimination against plaintiff, or against a class of inmates which included plaintiff, and that

24  such conduct did not relate to a legitimate penological purpose.  See Village of Willowbrook v.

25  Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class

26  of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v.

27  Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940

28  F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

1    Here, the Plaintiff alleges discrimination based on his designation as a GP or

2    general population inmate, which precluded him from proper access to legal materials in the

3    library.  See ECF No. 58 at 3.  Plaintiff does not allege racial discrimination within the prison, nor

4    any discrimination based on religion or gender.  See id.  Therefore, the Court will utilize a

5    balancing approach referred to as "minimal scrutiny," wherein the government need only show a

6    legitimate or rational basis for the alleged violation.

7    The rational basis standard applied here is such that equal protection is deemed

8    denied only if the classification "rests on grounds wholly irrelevant to the achievement of the

9    state's legitimate objective."  See McGowan v. Maryland, 366 U.S. 420, 425-26 (1961).  In

10   applying the rational basis standard to CHCF's programming policy, the Court finds that the

11   policy's purpose survives scrutiny.  The purpose of the transition was to "provide a housing

12   environment for inmate-patients demonstrating positive programming efforts and a desire not to

13   get involved in the destructive cycles of violence." ECF No. 58 at 19.  As the CHCF explained,

14   inmates are no longer classified as GP or SNY, but as programmers or non-programmers.  During

15   inmate classification reviews, inmates could choose to stay, or if they can't live with certain

16   groups, they had the option to transfer.  See id. at 21.  Furthermore, CHCF explained that to

17   ensure the safety and security of all CHCF staff and inmates, interactions between the

18   programming and non-programming inmates must not take place.  See id.  To effectuate CHCF's

19   policies and to provide Plaintiff with access to the library materials, Defendants did not give

20   Plaintiff physical access to the library, but Plaintiff was allowed access to library materials via

21   paging.  See id. at 38.  CDCR has a legitimate interest in ensuring the safety of all CHCF staff

22   and inmates and limiting interactions between programmers and non-programmers is appropriate

23   under the circumstances.  Lastly, Plaintiff was not forced to be a non-programmer, was aware of

24   the limitations that accompanied non-programmer status, and had alternatives to access

25   institutional computers for his legal needs.

26   For these reasons, Plaintiff does not state a valid claim that his Equal Protection

27   rights under the Fourteenth Amendment have been violated.

28   / / /

6

1        **B.        First Amendment Claims**

2                Plaintiff appears to allege to claims arising under the First Amendment – a claim

3        based on denial of access to the courts and a claim based on retaliation.  Each is discussed below.

4                1.        Access to the Courts

5                Prisoners have a First Amendment right of access to the courts.  See Lewis v.

6        Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64

7        F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance

8        procedures).  This right includes petitioning the government through the prison grievance process.

9        See id.  Prison officials are required to "assist inmates in the preparation and filing of meaningful

10        legal papers by providing prisoners with adequate law libraries or adequate assistance from

11        persons trained in the law."  Bounds, 430 U.S. at 828.  The right of access to the courts, however,

12        only requires that prisoners have the capability of bringing challenges to sentences or conditions

13        of confinement.  See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous

14        criminal appeals, habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55.

15        Therefore, the right of access to the courts is only a right to present these kinds of claims to the

16        court, and not a right to discover claims or to litigate them effectively once filed.  See id. at 354-

17        55.

18                As a jurisdictional requirement flowing from the standing doctrine, the prisoner

19        must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to

20        contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-

21        frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).  Delays in

22        providing legal materials or assistance which result in prejudice are "not of constitutional

23        significance" if the delay is reasonably related to legitimate penological purposes.  Lewis, 518

24        U.S. at 362.

25                Plaintiff claims that because he was barred physical access to the legal library, he

26        was unable to adequately litigate his ongoing habeas petition, which violated his right to access

27        the court.  See ECF No. 58 at 3-4, 10-13.  However, the Supreme Court has made clear that right

28        of access to the courts only requires that prisoners have the capability of bringing challenges to

1  sentences or conditions of confinement.  See Lewis, 518 U.S. at 356-57.  Consequently,

2  Plaintiff's claim is flawed because not only was he capable—he did file his habeas petition.

3  Therefore, the right of access to the court is only a right to present claims to the court, and the

4  Plaintiff was afforded that right.  The record indicates that Plaintiff filed his habeas petition and

5  reply brief, duly supported by a basis in fact and law.  See ECF No. 89-2 at 323-330.

6  Furthermore, as mentioned, Plaintiff did have the right to access library materials via institutional

7  computers adequately.  This right "guarantees no particular methodology," rather it is the

8  capability requirement that underscores the right to access the courts.  See Lewis, 518 U.S. at

9  356-357.  Plaintiff has not shown that the CHCF's program hindered his efforts to pursue his

10  habeas petition.  As mentioned, Plaintiff did timely file his habeas petition, and even though he

11  could not physically go to the library to get the materials, he still had access via the paging

12  system.  See ECF No. 58 at 40.  As such, CHCF's program did not hinder Plaintiff's effort to

13  assert his claim.

14              2.      Retaliation

15              In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must

16  establish that he was retaliated against for exercising a constitutional right, and that the retaliatory

17  action was not related to a legitimate penological purpose, such as preserving institutional

18  security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting

19  this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the

20  exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995);

21  Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also

22  show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by

23  the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also

24  Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must

25  establish the following in order to state a claim for retaliation: (1) prison officials took adverse

26  action against the inmate; (2) the adverse action was taken because the inmate engaged in

27  protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the

28  adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

8

1    Plaintiff mentions "retaliation," but it is unclear as to Plaintiff's basis for his

2    allegation.  <u>See</u> ECF No. 58 at 3.  However, even construing Plaintiff's complaint liberally, the

3    Court finds Plaintiff retaliation claim is unfounded.  Plaintiff seems to assert that Defendants'

4    denied Plaintiff proper access to legal materials because Plaintiff elected to be a GP inmate.  <u>See</u>

5    <u>id.</u> at 2.  Yet, Plaintiff still had access to legal materials via institutional computers.  <u>See</u> <u>id.</u> at 37-

6    38.  Therefore, the Court cannot conclude that denial of physical access to the library constitutes

7    an adverse action.  Even if it is undisputed that denying Plaintiff physical access to the library is

8    an adverse action, Plaintiff still submitted a reply brief—so any chilling effect on Plaintiff's First

9    Amendment rights is not well taken.  Even more profound is CDCR's legitimate penological

10   purpose for denying Plaintiff physical access to the library.  <u>See</u> <u>id.</u> at 19-30, 33-42.  The purpose

11   of keeping programmers and non-programmers separated was solely due to safety concerns

12   amongst the inmates.  <u>See</u> <u>id.</u>  This overriding concern is sufficient, and with a lack of facts

13   asserted by Plaintiff to the contrary, the Court has no basis to conclude the Defendants acted

14   unlawfully.

15       **C.    <u>Sixth Amendment Claim – Right to Counsel</u>**

16   The Sixth Amendment to the United States Constitution gives every criminal

17   defendant the right to have assistance of counsel for his defense.  U.S. Const. amend. VI.  Yet, the

18   Supreme Court has declared that civil litigants do not have a Sixth Amendment right to counsel

19   even when the proceedings have dire consequences to the civil litigants.  <u>See</u> <u>Lassiter v. Dep't of</u>

20   <u>Soc. Servs.</u>, 452 U.S. 18, 18 (1981) (holding that failure to appoint counsel for indigent parents in

21   proceedings for termination of parental status did not deprive parent of due process).

22   Furthermore, the Supreme Court has held that a party who elects to represent himself cannot

23   subsequently complain that the quality of his own defense is akin to a denial of effective

24   assistance of counsel. <u>See</u> <u>Faretta v. California</u>, 422 U.S. 806, 834 n.46 (1975).

25   Here, Plaintiff alleges that he was unable to adequately litigate his habeas petition

26   because Defendants' acts or omissions prevented his access to legal materials.  <u>See</u> ECF No. 58 at

27   3.  The Plaintiff's claims are not cognizable for two reasons.  First, as mentioned, the Supreme

28   Court has held that the right to counsel does not extend to civil actions, which includes Plaintiff's

1    habeas petition.  Second, Plaintiff claims he was unable to effectively represent himself, which

2    does not equate to denial of access to counsel in violation of the Sixth Amendment.  See id. at 4.

3    Plaintiff had access to institutional computers and managed to complete a reply brief in favor of

4    his position.  See ECF No. 89-2 at 323-330. Therefore, the Court finds that Plaintiff's Sixth

5    Amendment claim fails to plead an adequate basis for relief.

6        **D.    <u>Qualified Immunity</u>**

7            "[G]overnment officials performing discretionary functions [are entitled to] a

8    qualified immunity, shielding them from civil damages liability as long as their actions could

9    reasonably have been thought consistent with the rights they are alleged to have

10   violated."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987) (citations omitted).  "Qualified

11   immunity balances two important interests—the need to hold public officials accountable when

12   they exercise power irresponsibly and the need to shield officials from harassment, distraction,

13   and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231

14   (2009); <u>see also</u> <u>Ioane v. Hodges</u>, 903 F.3d 929, 933 (9th Cir. 2018).  The Supreme Court has set

15   forth a two-part analysis for resolving government officials' qualified immunity

16   claims. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

17           First, the Court must consider whether the facts "[t]aken in the light most

18   favorable to the party asserting the injury … show [that] the [defendant's] conduct violated a

19   constitutional right[.]" <u>Saucier</u>, 533 U.S. at 201.  Second, the court must determine whether the

20   right was clearly established at the time of the alleged violation.  <u>See</u> <u>Wood v. Moss</u>, 572 U.S.

21   744, 757; <u>see also</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (holding that government

22   officials are immune so long as their conduct does not violate clearly established constitutional

23   rights of which a reasonable person would have known).

24           Here, Defendants argue that they are entitled to qualified immunity based on

25   Plaintiff's claims because they violated no constitutional rights.  <u>See</u> ECF No. 89-1 at 26.  The

26   Court agrees.  Although Plaintiff did not have physical access to the library, the facts indicate that

27   he had access to the court—evidenced by his timely filed reply brief.  <u>See</u> ECF No. 89-2 at 323-

28   330.  Plaintiff's equal protection claim also is unfounded.  The differential treatment between

1    programmers and non-programmers was supported by the CDRC's need to keep prisoners and

2    staff, safe, thus clearly supported by a rational basis.  Plaintiff's Sixth Amendment claim also is

3    insufficient.  As mentioned, Plaintiff's argument that he did not have adequate access to legal

4    materials needed for his defense does not equate to a denial of counsel.

5            As to Plaintiff's First Amendment claims, Plaintiff filed his reply brief and any

6    argument that Defendants' chilled Plaintiff's exercise of his First Amendment is insufficient.

7    Further, CDCR's policy restricting non-programmers access to the library is supported by safety

8    and security interests among prisoners and staff.  See id. at 19-30, 33-42.  This Court takes

9    particular note that although Plaintiff was dissatisfied by Defendants' failure to respond to his

10    requests properly, Defendants still provided Plaintiff access to computers for his legal research.

11    As such, this Court has no basis for concluding that Defendants' actions precluded Plaintiff from

12    filing his habeas corpus petition.

13            In applying the second prong in Harlow, Plaintiff's claim equal protection claim is

14    also barred.  Plaintiff voluntarily elected non-programming status.  Defendants enforced the

15    CHCF policies against all inmates.  CDCR staff enforced the policies to ensure safety and

16    security amongst all prisoners and staff.  As such, there is no basis to conclude that a reasonable

17    person in Defendants' shoes could have believed their conduct violated Plaintiff's equal

18    protection rights.

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

# IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's motion for judgment on the pleadings, ECF No. 89, be granted and this action be dismissed in its entirely with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 27, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

12